Yaman Salahi (SBN 288752)
ysalahi@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

Additional counsel appear below signature line

*Counsel for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGELIO RAMIREZ, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE CONTROL GROUP MEDIA COMPANY, LLC, a Delaware limited liability company; PEOPLECONNECT, INC., a Delaware corporation; INSTANT CHECKMATE, LLC, a Delaware limited liability company; TRUTHFINDER, LLC, a Delaware limited liability company, and INTELIUS LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.: **'22CV1128 L    BGS**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**Violations of the California Right of Publicity Statute**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Rogelio Ramirez brings this Class Action Complaint against Defendants The Control Group Media Company, LLC ("TCG"), PeopleConnect, Inc., Instant Checkmate, LLC, TruthFinder, LLC, and Intelius LLC to put an end to Defendants' unlawful practice of using the names and identities of California residents without their consent in order to promote Defendants' services. Plaintiff, on behalf of himself and all others similarly situated, alleges as follows upon

personal knowledge as to his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his own attorneys.

## NATURE OF THE ACTION

1. Defendants operate a range of websites that purport to sell access to databases containing proprietary "detailed reports" about people to anybody willing to pay for a monthly subscription.

2. To market their services, Defendants encourage consumers to perform a free "people search" on their websites. When consumers perform a free search for an individual—by typing the individual's first and last name into the search bar—Defendants display webpages featuring the searched-for individual's full name alongside certain uniquely identifying information, including age, location, and names of relatives. The purpose of these pages is twofold: first, they show potential customers that Defendants' database contains detailed reports for the *specific* individual who is the subject of a search and represent that the detailed report contains much more information about the individual than the "free" report, and second, they offer to sell them a paid subscription to their services, where they can access detailed reports about *anybody* in their database. In other words, Defendants do not offer to sell detailed reports about the individuals searched on their websites, but rather, use those individuals' identities to sell subscriptions to Defendants' paid services.

3. Unsurprisingly, the people appearing in these advertisements never provided Defendants with their consent (written or otherwise) to use their identities for any reason, let alone for Defendants' own marketing and commercial purposes.

4. Defendants knowingly search for and obtain identifying information on California residents. Indeed, this lawsuit revolves around Defendants' business practice of acquiring identifying information about California residents with the specific intent of selling access to that information to its customers.

5. Defendants compile and generate the content they advertise and sell on their websites.

6. By knowingly using Plaintiff's identity in their advertisements without consent and for their own commercial gain, Defendants violated—and continue to violate—the California right of publicity statute. Cal. Civ. Code § 3344.

## PARTIES

7. Plaintiff Rogelio Ramirez is a natural person and a resident of the State of California.

8. Defendant The Control Group Media Company, LLC ("TCG") is a limited liability company existing under the laws of the State of Delaware with its principal place of business located at 600 B Street, Suite 900, San Diego, California 92101. TCG operates under a fictitious business name of "PeopleConnect."

9. Defendant PeopleConnect, Inc., is a corporation existing under the laws of the State of Delaware with its principal place of business with regard to the websites at issue here in San Diego, California.

10. Defendant Instant Checkmate, LLC is a limited liability company existing under the laws of the State of Delaware with its principal place of business located at 600 B Street, Suite 900, San Diego, California 92101. Defendant Instant Checkmate, LLC owns and operates the website InstantCheckmate.com.

11. Defendant TruthFinder, LLC is a limited liability company existing under the laws of the State of Delaware with its principal place of business located at 600 B Street, Suite 900, San Diego, California 92101. Defendant TruthFinder, LLC owns and operates the website TruthFinder.com.

12. Defendant Intelius LLC is a limited liability company existing under the laws of the State of Delaware with its principal place of business located at One Sansome Street, 37th Floor, San Francisco, CA 94104. Defendant Intelius LLC

owns and operates the websites Intelius.com and USSearch.com.

13. TCG controls and directly operates Defendants Instant Checkmate, LLC, TruthFinder, LLC, and Intelius LLC—and their respective websites—as a single enterprise, including by sharing its management and employees. The enterprise was previously controlled and directly operated by Defendant PeopleConnect, Inc., before being transferred to TCG in approximately mid-2021.[1]

## JURISDICTION AND VENUE

14. This Court has original jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), because (i) at least one member of the putative Class is a citizen of a state or country different from at least one Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) none of the exceptions under the subsection apply to this action.

15. This Court has personal jurisdiction over Defendants because they transact significant business in this District, misappropriate the identities of people that they know reside in this District, and the unlawful conduct alleged in the Complaint occurred in and emanated from this District.

16. Venue is proper in this Court under 28 U.S.C. § 1391 because Defendants are headquartered and reside in this District, and a substantial part of

---

[1] Since mid-2021, TCG's Senior Vice President of Product has submitted multiple declarations in cases pending in the Northern District of Illinois regarding the business practices of Intelius and TruthFinder, which he confirmed are owned and operated by TCG. *See La Fronza v. PeopleConnect*, Case No. 1:21-cv-03027, Dkt. No. 24-1 ¶¶ 1-3 (N.D. Ill.) (testifying that he "perform[ed] work for Intelius LLC," which "operates the website www.USSearch.com" and that he was "responsible for the user interface of US Search, including the design of the webpages that users see and interact with on the website"); *La Fronza v. TruthFinder*, Case No. 1:21-cv-03026, Dkt. No. 20-1 ¶¶ 1-3 (N.D. Ill.) (same re: TCG and TruthFinder, LLC and the website www.truthfinder.com). In March 2021, however, PeopleConnect Inc.'s Associate Director of Compliance and IP testified that PeopleConnect, Inc. then owned and operated Intelius.com. *See La Fronza v. PeopleConnect*, Case No. 1:21-cv-00280, Dkt. No. 22-1 ¶¶ 1-3 (N.D. Ill.).

the events giving rise to Plaintiff's claims arose in this District.

# FACTUAL ALLEGATIONS

## II. THE CALIFORNIA RIGHT OF PUBLICITY STATUTE

17. The California legislature enacted a right of publicity statute in 1971 to protect individual property rights and prevent the exploitation of individuals' identities for another's commercial gain.

18. The statute protects individuals from the unauthorized use of any of their attributes, including but not limited to, their names, signatures, photographs, images, likenesses, voices, or a substantially similar imitation of one or more of those attributes in the sale or advertisement of products, goods, merchandise, and services.

19. To this end, the statute states that, "[a]ny person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent . . . shall be liable for any damages sustained by the person or persons injured as a result thereof." Cal. Civ. Code § 3344(a). Notably, the California right of publicity statute does not require the person seeking relief under the statute to be a public figure.

## II. DEFENDANTS USE INDIVIDUALS' IDENTITIES TO PROMOTE THEIR PAID SUBSCRIPTION SERVICE

20. TCG controls and operates (and until mid-2021, PeopleConnect, Inc. controlled and operated) Defendants Instant Checkmate, LLC, TruthFinder, LLC, and Intelius LLC, and their respective "people search" websites: InstantCheckmate.com, TruthFinder.com, Intelius.com, and USSearch.com (together, the "People Search Websites").

21. TCG and PeopleConnect, Inc. designed each of the People Search Websites to operate in a substantially similar way: to misappropriate consumers'

identities for their own commercial gain by using Plaintiff's and the Class members' identities in conjunction with an offer to purchase a paid subscription to access their database—entirely without Plaintiff's or the Class members' knowledge or consent.

22. TCG controls the marketing and advertising of all the People Search Websites, including the Marketing Page solicitations at issue in this case. TCG also controls many other operational aspects of each of the People Search Websites. This includes, for example, the Websites' use of virtually identical customer agreements and notices, the same graphical interface features and site layouts, and the same databases and other resources to respond to searches performed on the websites.

### A. The Instant Checkmate Website

23. TCG owns and operates InstantCheckmate.com, a website that sells access to comprehensive background reports "on just about anyone." The reports are compiled in part from databases and public record repositories.

24. Subscriptions that let users access Instant Checkmate reports must be purchased from the InstantCheckmate.com website. Once a subscription is purchased, users may access individual reports that may include high value information including, *inter alia*, the individual's address, birth date, marriage records, and criminal history.

25. As shown in Figure 1 below, when a consumer visits InstantCheckmate.com and searches for an individual by using their first and last name, InstantCheckmate.com displays a list of the individuals found within its records that have the same name, alongside certain uniquely identifying information such as each individual's current age, location and names of their

immediate family members (the "Instant Checkmate Marketing Page").[2]



(Figure 1.)

26. Once a consumer selects an individual (by clicking "Open Report") from the Instant Checkmate Marketing Page, Instant Checkmate displays a checkout page with an offer to purchase a subscription costing $13.41, with access to one month of unlimited reports. *See* Figure 2.

(Figure 2.)

27. While a consumer may visit InstantCheckmate.com to search and potentially obtain information on one specific individual, Instant Checkmate ultimately offers for sale an entirely different product. Instant Checkmate is not offering for sale only information on the searched-for individual. Instead, Instant Checkmate is offering for sale a monthly subscription service that grants the purchaser unlimited access to background reports on anybody in its database. The searched-for individual's report is a small part of a large database with reports on millions of people.

---

[2] Plaintiff's attorneys, who collected the screenshots included in this complaint from Defendants' websites as part of their pre-suit investigation, timely opted out of Defendants' arbitration agreements. In any event, Plaintiff's retention agreement expressly precludes Plaintiff's attorneys from agreeing to arbitrate claims on his behalf.

28. In this way, Instant Checkmate misappropriated people's identities (individuals' names and other identifying information such as their age, location, and known relatives) for its own commercial benefit (i.e., to market and promote a monthly subscription to access unlimited reports on individuals in its database).

29. Most importantly, Instant Checkmate never obtained written consent from Plaintiff and Class members to use their names for any reason, let alone for commercial purposes. Defendants never notified Plaintiff and Class members that their names would appear on the Instant Checkmate Marketing Page in conjunction with an offer to purchase subscription access to its database of reports. Moreover, Plaintiff and the Class members have no relationship with TCG or Instant Checkmate whatsoever.

### B. The TruthFinder Website

30. TCG owns and operates TruthFinder.com, a website that sells access to comprehensive background reports "about almost anyone." The reports are compiled in part from databases and public record repositories.

31. Subscriptions that let users access TruthFinder reports must be purchased from the TruthFinder.com website. Once a subscription is purchased, users may access individual reports that may include high value information including, *inter alia*, the individual's address, birth date, marriage records, and criminal history.

32. As shown in Figure 3 below, when a consumer visits TruthFinder.com and searches for an individual by using their first and last name, TruthFinder.com displays a list of the individuals found within its records that have the same name, alongside certain uniquely identifying information such as each individual's current age, location and names of their immediate family members (the "TruthFinder Marketing Page").



(**Figure 3.**)

33. Once a consumer selects an individual (by clicking "Open Report") from the TruthFinder Marketing Page, TruthFinder displays a checkout page with two offers to purchase a subscription to the website: (i) a "MOST POPULAR" tier costing $28.05 per month with access to one month of unlimited reports and (ii) the "Power Users" tier costing $46.56, with access to two months of unlimited reports. *See* Figure 4.



(**Figure 4.**)

34. While a consumer may visit TruthFinder.com to search and potentially obtain information on one specific individual, TruthFinder ultimately offers for sale an entirely different product. TruthFinder is not offering for sale only information on the searched-for individual. Instead, TruthFinder is offering for sale a monthly subscription service that grants the purchaser unlimited access to background reports on anybody in its database. The searched-for individual's report is a small part of a large database with reports on millions of people.

35. In this way, TruthFinder misappropriated people's identities (individuals' names and other identifying information such as their age, location,

and known relatives) for its own commercial benefit (i.e., to market and promote a monthly subscription to access unlimited reports on individuals in its database).

36. Most importantly, TruthFinder never obtained written consent from Plaintiff and Class members to use their names for any reason, let alone for commercial purposes. Defendants never notified Plaintiff and Class members that their names would appear on the TruthFinder Marketing Page in conjunction with an offer to purchase subscription access to its database of reports. Moreover, Plaintiff and the Class members have no relationship with TCG or TruthFinder whatsoever.

### C. The Intelius Website

37. TCG owns and operates Intelius.com, a website that sells detailed profile reports about individuals and "access to the best information available online." The reports are compiled in part from databases and public record repositories.

38. Subscriptions that let users access Intelius reports must be purchased from the Intelius.com website. Once a subscription is purchased, users may access individual reports that may include high value information including, *inter alia*, the individual's address, birth date, marriage records, and criminal history.

39. As shown in Figure 5 below, when a consumer visits Intelius.com and searches for an individual by using their first and last name, Intelius.com displays a list of the individuals found within its records that have the same name, alongside certain uniquely identifying information such as each individual's current age, location and names of their immediate family members (the "Intelius Marketing Page").



(**Figure 5.**)

40. Once a consumer selects an individual (by clicking "Open Report") from the Intelius Marketing Page, Intelius displays a checkout page with two offers to purchase a subscription to the website: (i) a "MOST POPULAR" tier costing $24.86 per month with access to one month of unlimited reports and (ii) the "Power User" tier costing $42.25, with access to two months of unlimited reports. *See* Figure 6.

(**Figure 6.**)

41. While a consumer may visit Intelius.com to search and potentially obtain information on one specific individual, Intelius ultimately offers for sale an entirely different product. Intelius is not offering for sale only information on the searched-for individual. Instead, Intelius is offering for sale a monthly subscription service that grants the purchaser unlimited access to background reports on anybody in its database. The searched-for individual's report is a small part of a large database with reports on millions of people.

42. In this way, Intelius misappropriated people's identities (individuals'

names and other identifying information such as their age, location, and known relatives) for its own commercial benefit (i.e., to market and promote a monthly subscription to access unlimited reports on individuals in its database).

43. Most importantly, Intelius never obtained written consent from Plaintiff and Class members to use their names for any reason, let alone for commercial purposes. Defendants never notified Plaintiff and Class members that their names would appear on the Intelius Marketing Page in conjunction with an offer to purchase subscription access to its database of reports. Moreover, Plaintiff and the Class members have no relationship with TCG or Intelius whatsoever.

### D. The US Search Website

44. TCG owns and operates USSearch.com, a website that sells access to comprehensive background reports "on just about anyone." The reports are compiled in part from databases and public record repositories.

45. Subscriptions that let users access US Search reports must be purchased from the USSearch.com website. Once a subscription is purchased, users may access individual reports that may include high value information including, *inter alia*, the individual's address, birth date, marriage records, and criminal history.

46. As shown in Figure 7 below, when a consumer visits USSearch.com and searches for an individual by using their first and last name, USSearch.com displays a list of the individuals found within its records that have the same name, alongside certain uniquely identifying information such as each individual's current age, location and names of their immediate family members (the "US Search Marketing Page").



(**Figure 7.**)

47. Once a consumer selects an individual (by clicking "Get This Report") from the US Search Marketing Page, US Search displays a checkout page with an offer to purchase a subscription costing $19.86, with access to one month of unlimited reports. *See* Figure 8.



(**Figure 8.**)

48. While a consumer may visit USSearch.com to search and potentially obtain information on one specific individual, US Search ultimately offers for sale an entirely different product. US Search is not offering for sale only information on the searched-for individual. Instead, US Search is offering for sale a monthly subscription service that grants the purchaser unlimited access to background reports on anybody in its database. The searched-for individual's report is a small part of a large database with reports on millions of people.

49. In this way, US Search misappropriated people's identities (individuals' names and other identifying information such as their age, location, and known relatives) for its own commercial benefit (i.e., to market and promote a monthly subscription to access unlimited reports on individuals in its database).

50. Most importantly, US Search never obtained written consent from Plaintiff and Class members to use their names for any reason, let alone for commercial purposes. Defendants never notified Plaintiff and Class members that

their names would appear on the US Search Marketing Page in conjunction with an offer to purchase subscription access to its database of reports. Moreover, Plaintiff and the Class members have no relationship with TCG, Intelius, or US Search whatsoever.

## FACTS SPECIFIC TO PLAINTIFF ROGELIO RAMIREZ

51. Plaintiff Rogelio Ramirez discovered that Defendants were using his identity to solicit the purchase of paid subscriptions to the People Search Websites.

52. Defendants specifically identified Plaintiff Ramirez by his full name, age, location, and names of immediate family members on the Instant Checkmate, TruthFinder, Intelius, and US Search Marketing Pages. *See* Figures 1, 3, 5, and 7.

53. Plaintiff never provided Defendants with his written consent (or consent of any kind) to use any attribute of his identity for commercial purposes, and certainly never authorized Defendants to use his identity to promote any of their products or services.

54. Defendants have never provided Plaintiff with compensation of any kind for their use of Plaintiff's identity in connection with any advertising on the People Search Websites.

55. Plaintiff is not and never has been a customer of any of Defendants' websites. In fact, he has no relationship with TCG or any of the Defendants whatsoever.

## CLASS ALLEGATIONS

56. **Class Definitions:** Plaintiff Rogelio Ramirez brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and a Class and Subclasses (referred to as the "Class", unless otherwise stated), defined as follows:

> **PeopleConnect Class:** All California residents (1) whose identities were displayed on the Marketing Pages of any of the People Search Websites, and (2) who have never purchased any products or services from TCG/PeopleConnect or any of the People Search Websites.

**Instant Checkmate Subclass:** All California residents (1) whose identities were displayed on the Instant Checkmate Marketing Page, and (2) who have never purchased any products or services on InstantCheckmate.com.

**TruthFinder Subclass:** All California residents (1) whose identities were displayed on the TruthFinder Marketing Page, and (2) who have never purchased any products or services on TruthFinder.com.

**Intelius Subclass:** All California residents (1) whose identities were displayed on the Intelius Marketing Page, and (2) who have never purchased any products or services on Intelius.com.

**US Search Subclass:** All California residents (1) whose identities were displayed on the US Search Marketing Page, and (2) who have never purchased any products or services on USSearch.com.

57. For clarity, the proposed Class and Subclasses include persons who were California residents at the time their identities were misappropriated but who subsequently established residency in other locations, and otherwise meet the stated criteria. Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

58. **Ascertainability and Numerosity**: The exact number of Class members is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. Additionally, the Class is ascertainable because its members will be easily identified through Defendants' records.

59. **Commonality and Predominance**: There are many questions of law

and fact common to the claims of Plaintiff and the putative Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    a.    Whether Defendants used Plaintiff's and Class members' names and identities for a commercial purpose;

    b.    Whether Plaintiff and Class members provided their written consent to Defendants to use their names and identities in advertisements;

    c.    Whether the conduct described herein constitutes a violation of the California right of publicity statute; and

    d.    Whether Plaintiff and the Class members are entitled to injunctive relief.

60. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendants' uniform wrongful conduct.

61. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defense unique to Plaintiff.

62. **Policies Generally Applicable to the Classes:** This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' policies challenged herein apply and affect members of the Class uniformly and Plaintiff's challenge of these policies hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law

applicable only to Plaintiff. Plaintiff and the members of the Class have suffered harm and damages as a result of Defendants' unlawful and wrongful conduct.

63. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## COUNT I
### Violation of the California Right of Publicity Statute
### Cal. Civ. Code § 3344
### (On behalf of Plaintiff Ramirez and the Class)

64. Plaintiff Ramirez incorporates the foregoing allegations as if fully set forth herein.

65. The California Right of Publicity Statute prohibits and provides damages for the knowing misappropriation of an individual's name, voice, signature, photograph, or likeness in advertising or soliciting without the individual's prior consent. *See* Cal. Civ. Code § 3344(a).

66. Defendants sold and/or sell subscription-based access to their databases containing detailed reports about people.

67. As described above, to promote those reports, Defendants used and/or use Plaintiff Ramirez's and the putative class members' identities on their various Marketing Pages, which display the individuals found within their records that match the searched name, alongside uniquely identifying information such as each person's current age, location, and names of their immediate family members. This information served and/or serves to identify the individual and demonstrate that there are detailed reports in their databases for the person they searched for.

68. The Marketing Pages have a commercial purpose in that they promote the Defendants' websites and encourage potential customers to purchase paid subscriptions to access reports in their databases.

69. Plaintiff and members of the Class never provided Defendants with their consent to use their identities in advertisements for Defendants' paid subscriptions.

70. Defendants deprived Plaintiff and Class members of control over whether and how their names can be used for commercial purposes.

71. By using their identities in advertisements to sell their services, Defendants derived economic value from Plaintiff and the Class members' identities and, in turn, deprived Plaintiff and the Class members of such value. Defendants did not compensate Plaintiff and the Class members for their use of Plaintiff and the Class members' identities. This conduct resulted in economic injury to Plaintiff and the Class members.

72. Based upon Defendants' violation of the California Right of Publicity Statute, Plaintiff Ramirez and the Class members are entitled to (1) an injunction requiring Defendants to cease using their names and any attributes of their identities to advertise their products and services, (2) the greater of an award of actual damages (including profits derived from the unauthorized use of Plaintiff Ramirez's and Class members' names and identities) or statutory damages of $750 per violation to the members of the Class, (3) an award of punitive damages, and

(4) an award of costs and reasonable attorneys' fees under Cal. Civ. Code § 3344(a).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays that the Court enter an Order:

a. Certifying this case as a class action as defined above, appointing Rogelio Ramirez as Class Representative, and appointing his attorneys as Class Counsel;

b. Declaring that Defendants' actions described herein constitute a violation of the California Right of Publicity Statute;

c. Awarding injunctive and other equitable relief as necessary to protect the interest of the Class, including, *inter alia*, an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

d. Awarding statutory damages in amounts to be determined by the Court and/or jury;

e. Awarding punitive damages where applicable;

f. Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

g. Awarding Plaintiff and the Class pre- and post-judgment interest; and

h. Granting such other and further relief as the Court deems equitable and just.

Respectfully submitted,

**ROGELIO RAMIREZ**, individually and on behalf of all others similarly situated,

| | |
|---|---|
| Dated: August 1, 2022 | By: */s/ Yaman Salahi*<br>*One of Plaintiff's Attorneys* |
| | Yaman Salahi (SBN 288752)<br>ysalahi@edelson.com<br>**EDELSON PC**<br>150 California Street, 18th Floor<br>San Francisco, California 94111<br>Tel: (415) 212.9300<br>Fax: (415) 373.9435 |
| | Benjamin H. Richman (*Pro Hac Vice* admission to be sought)<br>brichman@edelson.com<br>Ari J. Scharg (*Pro Hac Vice* admission to be sought)<br>ascharg@edelson.com<br>Benjamin Thomassen (*Pro Hac Vic* admission to be sought)<br>bthomassen@edelson.com<br>**EDELSON PC**<br>350 North LaSalle Street, 14th Floor<br>Chicago, Illinois 60654<br>Tel: (312) 589.6370<br>Fax: (312) 589.6378 |
| | Philip L. Fraietta (*Pro Hac Vice* admission to be sought)<br>pfraietta@bursor.com<br>**BURSOR & FISHER, P.A.**<br>888 Seventh Avenue<br>New York, NY 10019<br>Tel: (646) 837-7150<br>Fax: (212) 989-9163 |